IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | DATE FILED: |
| MARK IRVELLO | : | VIOLATIONS:<br>18 U.S.C. § 666(a)(1)(A), (b) (theft from organization receiving federal funds - 1 count) |
| | : | |
| | : | 18 U.S.C. § 666(a)(2), (b) (bribery concerning federal programs - 1 count) |
| | : | |
| | : | 18 U.S.C. § 1343 (wire fraud - 1 count) |
| | : | 18 U.S.C. § 2 (aiding and abetting) |
| | : | Notices of forfeiture |

**INFORMATION**

<u>COUNT ONE</u>

THE UNITED STATES ATTORNEY CHARGES THAT:

<u>BACKGROUND</u>

At all times material to this information:

      1.    The Southeastern Pennsylvania Transportation Agency ("SEPTA") was a metropolitan transportation authority providing rail, trolley, and bus services to passengers within Philadelphia, Pennsylvania, and the surrounding counties as well as service between the states of Delaware and New Jersey.

2. SEPTA was an organization, and an agency of a state government, which received annual benefits in excess of $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, and other forms of federal assistance.

3. SEPTA issued "procurement cards," also known as P-Cards, which operated as SEPTA credit cards, to management level employees working in SEPTA's Bridges and Buildings Department ("BBD"). The BBD was responsible for maintaining, repairing, and renovating SEPTA facilities throughout Philadelphia. SEPTA provided written rules and procedures to the BBD employees concerning the use of these cards.

4. SEPTA rules allowed the P-Cards to be used for legitimate business reasons to purchase materials and equipment for jobsites when there was an emergency need for those items and they were not available in SEPTA's stock system. Under SEPTA rules, most materials for a jobsite should have been purchased in advance of the project through the purchase order ("PO") process.

5. Consistent with the purpose of the P-Cards, SEPTA rules further limited the use of the cards. Beginning in or around 2017, the limits for individual P-Cards were (1) a maximum of $1,000 for a single transaction; (2) a maximum of $4,000 for daily purchases; and (3) no more than four transactions per day. Employees were not permitted to artificially break up purchases to hide violations of the rules, *e.g.*, by making multiple smaller purchases to avoid crossing the $1,000 threshold, also known as "fragmenting." Prior to 2017, these limits were lower, *i.e.*, $500 for a single transaction and $2,000 for daily purchases.

6. Defendant MARK IRVELLO was the long-time owner and operator of MSI Tool Repair and Supply ("MSI"), located at 7343 West Chester Pike in Upper Darby, Pennsylvania. MSI sold tools and other construction products to various customers, including SEPTA, through employees in the BBD.

7. In or about July 2015, defendant MARK IRVELLO created AM Services and Supplies ("AM"), for the sole purpose of having a second company to bill SEPTA and evade the limitations on the P-Cards. Defendant IRVELLO did not use AM to bill any other entity. The business address for AM was the same as MSI (MSI and AM are collectively referred to here as "MSI").

8. David Abell, Rodney Martinez, Stephen Kish, Jesse Fleck, James Turner, Peter Brauner, and John Brady, all charged elsewhere, along with individuals known to the United States Attorney and identified here as Manager #1, Manager #2, Manager #3, and Manager #4, were managers in SEPTA's BBD. SEPTA issued each of these managers P-cards and trusted them to use those cards to make work-related purchases on behalf of SEPTA. These managers supervised numerous employees in the BBD and held the following positions:

    a. David Abell was a Senior Director of Maintenance;

    b. Rodney Martinez was a Senior Director of Maintenance;

    c. Stephen Kish was a Director of Maintenance;

    d. Jesse Fleck was a Director of Maintenance;

    e. James Turner was a Maintenance Manager;

    f. Peter Brauner was a Maintenance Manager;

    g. John Brady was a Maintenance Manager;

h.  Manager #1 was a Maintenance Manager;

i.  Manager #2 was a Maintenance Manager;

j.  Manager #3 was a Maintenance Manager; and

k.  Manager #4 was a Maintenance Manager.

## THE FRAUD AND BRIBERY SCHEME

9. In or about early 2013, at David Abell's suggestion, defendant MARK IRVELLO and Abell agreed to engage in a fraud and bribery scheme against SEPTA. They agreed that defendant IRVELLO would provide Abell with regular cash payments for Abell's personal benefit and that defendant IRVELLO would falsely bill SEPTA through the P-Card system for items that MSI was not providing to SEPTA. The false charges would cover the cash payments to Abell plus as much as double that amount to provide an equal share of fraud proceeds for defendant IRVELLO.

10. Defendant MARK IRVELLO and David Abell understood and agreed that defendant IRVELLO would make these cash payments to Abell not only to generate fraud proceeds for themselves, but also to maintain and grow the business of MSI with SEPTA. As part of this understanding and agreement, Abell purchased goods for SEPTA from MSI and encouraged and directed other SEPTA managers and employees in the BBD, including those managers identified above in paragraph 8, to make purchases from MSI. Those employees followed Abell's direction and made purchases from defendant IRVELLO and MSI.

11. After agreeing to engage in this scheme together, David Abell regularly solicited and demanded cash payments from defendant MARK IRVELLO. Defendant IRVELLO

responded by regularly providing cash to Abell in approximate amounts of $1,250 per month. Through MSI, defendant IRVELLO then charged the P-Cards of SEPTA managers for numerous items that he did not provide to SEPTA to compensate for the cash he gave to Abell and to generate substantial fraud proceeds for himself.

12. David Abell identified for defendant MARK IRVELLO the items for which to charge SEPTA on the P-Cards to make the charges appear legitimate and conceal the fraud from SEPTA and authorities. Specifically, at Abell's direction, defendant IRVELLO billed SEPTA for products that SEPTA might use, but in fact, did not need at that time. Similarly, at Abell's direction, defendant IRVELLO also billed SEPTA for products that he did provide to SEPTA, but billed SEPTA for substantially more of those products than he actually provided. Defendant IRVELLO thus combined legitimate with fraudulent billing, making the scheme difficult to detect.

13. Defendant MARK IRVELLO also used the managers' P-Cards interchangeably to make it easier to generate fraud proceeds and bill SEPTA without exceeding the transactional limits on the individual P-Cards. Defendant IRVELLO thus could use any manager's P-Card for transactions without regard for who was making a purchase or engaging in fraud with him.

14. Defendant MARK IRVELLO provided David Abell with cash payments on a regular basis, approximately twice per month, from in or about late 2013 until Abell left the employment of SEPTA on or about May 25, 2016.

15. Approximately one year before David Abell left the employment of SEPTA, he retired from his position as Senior Director of Maintenance and became a contractor

for SEPTA, continuing to work in SEPTA's BBD, as he did as a manager. SEPTA replaced Abell with Rodney Martinez, making Martinez the new Senior Director of Maintenance. Abell trained Martinez in his new position and introduced Martinez to the fraud and bribery scheme.

16. Defendant MARK IRVELLO made regular cash payments to David Abell and Rodney Martinez and continued to falsely bill SEPTA for products that he did not provide to SEPTA, as described above. The false billing covered the cash payments to Abell and Martinez and generated fraud proceeds for defendant IRVELLO.

17. Beginning on or about May 25, 2016, when David Abell left the employment of SEPTA, defendant MARK IRVELLO continued the scheme with Rodney Martinez. That is, Martinez regularly solicited cash payments from defendant IRVELLO, who provided cash to Martinez and fraudulently billed SEPTA through the P-Cards to cover the cash payments and defendant IRVELLO's share of the fraud proceeds.

18. Around this time, Rodney Martinez invited Jesse Fleck to join the scheme with defendant MARK IRVELLO. At the request of Martinez, Fleck helped identify the items for which defendant IRVELLO would falsely bill SEPTA. Fleck then shared, in part, in the cash proceeds Martinez obtained from defendant IRVELLO.

19. In or about 2014, several other SEPTA BBD managers began engaging in similar fraud activity with defendant MARK IRVELLO. Those managers, identified above in paragraph 8, along with David Abell and Rodney Martinez, solicited defendant IRVELLO for cash and personal items at no cost to the SEPTA managers. Defendant IRVELLO agreed to provide the cash and personal items to the managers, and as the parties further understood and agreed, defendant IRVELLO fraudulently billed SEPTA to cover the cost of those payments and

products and to generate additional fraud proceeds for defendant IRVELLO.

20. The most prolific additional participant in this fraud scheme was BBD manager Stephen Kish. From between in or about January 2014 through in or about in or about May 2019, defendant MARK IRVELLO made over $225,000 in purchases for Kish. In most of these cases, Kish directed defendant IRVELLO to purchase specific precious metals, particularly gold coins, each worth thousands of dollars. The purchases included several American Gold Eagle Coins, Gold American Buffalo Coins, South African Gold Krugerrand Coins, Canadian Gold Maple Leaf Coins, Royal Canadian Mint Gold Bars, and PAMP Suisse Gold Bars.

21. Defendant MARK IRVELLO purchased thousands of dollars of products for several other SEPTA BBD managers. For example,

a. On or about December 9, 2016, defendant IRVELLO purchased, for approximately $1,734, a Sonos Surround Sound System for SEPTA BBD manager Peter Brauner.

b. On or about November 26, 2018, defendant IRVELLO purchased, for approximately $1,800, Polaris ATV equipment for SEPTA BBD manager Jesse Fleck.

c. On or about October 1, 2018, defendant IRVELLO purchased, for approximately $474, a General Electric clothes dryer; and on or about February 19, 2019, purchased, for approximately $2,000, a Whippet dog -- both for SEPTA BBD manager James Turner.

d. On or about August 29, 2018, defendant IRVELLO purchased, for approximately $829, carpet and matting for SEPTA BBD manager John Brady.

e. On or about April 25, 2018, defendant IRVELLO purchased, for

approximately $360, two lawn edgers for SEPTA BBD Manager #3 and Manager #4.

22. Defendant MARK IRVELLO provided the cash and other items to the SEPTA BBD managers as requested, both to generate fraud proceeds for himself and to ensure that he continued to obtain and increase business from SEPTA employees.

23. From in or about early 2013 through in or about 2019, defendant MARK IRVELLO used MSI to become one of SEPTA's largest billers on the P-Card while defrauding SEPTA of more than $540,000. In doing so, defendant IRVELLO personally obtained more than $176,000 in fraud proceeds.

24. From in or about early 2013 and continuing through in or about 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**MARK IRVELLO,**

aiding and abetting agents of SEPTA, an organization, and an agency of a state government, which received annual benefits from 2013 through 2019 in excess of $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, and other forms of federal assistance, knowingly embezzled, stole, obtained by fraud, and otherwise without authority, knowingly converted, to the use of any person other than the rightful owner, and intentionally misapplied, and aided and abetted the embezzlement, stealing, obtaining by fraud, conversion, and misapplication of, property that was valued at more than $5,000 and was owned by, and under the care, custody, and control of SEPTA.

In violation of Title 18, United States Code, Sections 666(a)(1)(A), (b) and 2.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 23 of Count One of this information are incorporated here.

2. From in or about early 2013 through in or about 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**MARK IRVELLO**

corruptly gave, offered to give, and agreed to give, things of value, that is, cash payments and other items to SEPTA BBD managers, as agents of SEPTA, which received annual benefits from 2013 through 2019 in excess of $10,000 under federal programs involving grants, contracts, subsidies, loans, guarantees, and other forms of federal assistance, with intent to influence and reward SEPTA BBD managers, in connection with the business, transaction, and series of transactions of SEPTA involving things of value of $5,000 or more.

In violation of Title 18, United States Code, Section 666(a)(2), (b).

## COUNT THREE

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

1. Paragraphs 1 through 23 of Count One of this information are incorporated here.

2. From in or about early 2013 through in or about 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**MARK IRVELLO,**

alone and with co-schemers known to the United States Attorney, devised and intended to devise a scheme to defraud and to obtain money and property of SEPTA by means of false and fraudulent pretenses, representations, and promises.

3. On or about November 26, 2018, in the Eastern District of Pennsylvania and elsewhere, defendant

**MARK IRVELLO,**

alone and with co-schemers known to the United States Attorney, for the purpose of executing the scheme described above, and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate and foreign commerce signals and sounds travelling from the Eastern District of Pennsylvania to eBay servers located outside of Pennsylvania for defendant IRVELLO's purchase from eBay, for approximately $3,744, of American Eagle Gold Coins for SEPTA BBD manager S.K.

In violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE NO. 1

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 666(a)(1)(A), (b), set forth in this information, defendant

**MARK IRVELLO**

shall forfeit to the United States of America any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of such a violation, including, but not limited to, the sum of $176,620.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third party;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(3)(A).

## NOTICE OF FORFEITURE NO. 2

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 666(a)(2), (b), and 1343, set forth in this information, defendant

**MARK IRVELLO**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to, the sum of $176,620.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

JENNIFER ARBITTIER WILLIAMS
ACTING UNITED STATES ATTORNEY

*No.*_____

---

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

---

THE UNITED STATES OF AMERICA

vs.

MARK IRVELLO

---

**INFORMATION**
Count(s)

**18 U.S.C. § 666(a)(1)(A), (b) (theft from organization receiving federal funds - 1 count)
18 U.S.C. § 666(a)(2), (b) (bribery concerning federal programs - 1 count)
18 U.S.C. § 1343 (wire fraud - 1 count)
18 U.S.C. § 2 (aiding and abetting – 1 count)
Notices of forfeiture**

---

A true bill.

_____
Foreman

---

Filed in open court this _____day,
Of _____A.D. 20_____
_____
Clerk

Bail, $_____